## Case No. 2,747.

### The CITY OF GUATEMALA.

[7 Ben. 521.] [1]

District Court, S. D. New York. Dec., 1874.

COLLISION AT SEA—STEAMER AND SCHOONER—FOG—SPEED—DAMAGES.

1. A schooner was sailing about south half west, the wind being about east south-east. The night was foggy. The green light of an approaching steamer was seen about two points on her starboard bow, and the schooner kept on without changing her course till the collision which ensued. The steamer was going between eight and nine knots an hour. The light of the schooner was seen about a quarter of a mile distant, on the steamer's starboard bow. Her engine was stopped and reversed, and, being a propeller, she turned her head to starboard at

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

right angles, and her stem struck the schooner on her starboard side. Two of the schooner's crew, when the vessels were together, jumped aboard the steamer. The schooner also received damage by chafing, while the vessels were together, and the steamer charged negligence upon her, in not adopting proper and speedy measures to free herself: *Held,* that the collision was caused by the too great speed of the steamer in the fog.

[Cited in The City of Panama, Case No. 2,-764.

2. The loss of men by the schooner under the circumstances, if crippling her, was chargeable to the steamer, she being in fault for the collision.

3. The steamer was also responsible for any injury caused to the schooner by chafing while the vessels were together.

In admiralty.

R. D. Benedict, for libellant.

E. Pierrepont and H. S. Bennett, for claimants.

BLATCHFORD, District Judge. The libellant, as owner of the schooner Benjamin T. Biggs, files this libel against the steamship City of Guatemala, to recover for the damages sustained by him through a collision which took place between the two vessels on the 16th of May, 1874, shortly after midnight, in a fog, in the Atlantic ocean, about east of Chincoteague. The schooner was bound from New York to Newbern, N. C., and was heading about south half west, the wind being about east southeast. The steamer was bound to the northward. The stem of the steamer and the starboard side of the schooner, aft of the after hatch, came together, and the schooner was cut down nearly to the water's edge.

The libel alleges, that when the steamer was first seen, she was about two points on the starboard bow of the schooner, showing her green light, steering about north, and on a course which, had she continued it, would have carried her far to the west of the schooner; that, after sailing on that course till she was about five points on the starboard bow of the schooner, she suddenly changed her course and headed to the east, showing her red light and hiding her green one, and headed directly across the course of the schooner, and continued on that course till she struck the schooner; that the schooner did not change her course; and that the collision was caused solely through the fault and negligence of those on board of and in charge of the steamer, in that, among other things, she had no lookout, and improperly and wrongfully changed her course, and did not stop and back in time to avoid the schooner, and proceeded at too high a rate of speed.

The answer avers, that the steamer was moving backward and directly away from the schooner, and was run into by the schooner; that, at the time of the collision, and for an hour previous thereto, the steamer and the schooner were surrounded by and enveloped in a fog so dense as to render it impossible

for lights to be discerned at a greater distance than one quarter of a mile; that, even at that distance, the color of the lights could not be distinguished; that the steamer was constantly sounding steam whistles, and had three lookouts and the master on deck watching; that the schooner's light was discovered by the lookout on the steamer the moment it was possible to distinguish it; that, at that moment, the steamer was moving at between eight and nine knots an hour; that, by reason of the respective courses on which each vessel was then sailing, and the character of the sea, and their close proximity, it was impossible, when the schooner's light was first descried, to divert the steamer's course by the helm, in time to avoid a collision, but the proper orders were instantaneously given to the helmsman, and obeyed by him, and at the same time the master struck the engine bell, and the engines were immediately reversed, and before the contact the steamer had lost her headway, and was going back, and had swung broadside to her previous course; that, from the moment the schooner's light was first visible, or could possibly be seen on board of the steamer, until the moment of collision, was an interval of but two minutes and a half, during which period all that human skill or ability, promptly exercised, could do to avoid a collision, was done on board of the steamer; that the collision might have been avoided by those on board of the schooner with perfect ease, certainty and safety, by luffing, yet they pertinaciously and wrongfully held on, and thereby ran into the steamer; and that the steamer was a propeller, and, at the time of the collision, having reversed her engine and moving backward, unavoidably and naturally swung broadside to her previous course, and necessarily showed her red light to the schooner, which approached her without changing her course, or any means being used to change it, while the steamer, having lost her headway, could not be controlled by her helm.

The answer, reduced to a few words, makes out this case: There was a fog so dense that lights could not be seen at a greater distance than a quarter of a mile. The steamer was going at a speed of between eight and nine knots an hour. She discovered the schooner's light as soon as it was possible to do so, but too late to enable her, by the use of her helm or of her reversing power, to avoid the collision. The interval between seeing the schooner's light and the collision was two and a half minutes. The steamer, by reversing, turned herself at right angles to her former course, and, having also lost her headway, would not mind her helm. The schooner did not change her course, and failed to luff, and ran into the steamer, and is responsible for the collision.

The facts set up in the answer, so far from exonerating the steamer, establish her fault and acquit the schooner. The steamer was bound to avoid the schooner, and the schooner was bound to keep her course. The only fault charged in the answer against the schooner, as causing the collision, is, that the schooner did keep her course and did not luff. The schooner was sailing as close to the wind as she could. She had an adequate crew and a proper lookout and proper lights. The steamer made the schooner's green light nearly ahead, and immediately stopped and backed. The schooner made the steamer's green light a little on the starboard bow. The schooner held her course. The green light of the steamer got to be more on the starboard bow of the schooner. Then the steamer's green light was shut in and her red light came in view, and she struck the schooner. This accords with the evidence showing that, when the steamer backs, the effect is to throw her head to starboard, so that, on this occasion, she turned, by backing, six points to starboard.

Two of the schooner's crew jumped on board of the steamer while the vessels were afoul. This was because there was good reason to fear the schooner would sink. Any loss of men, in this way, if crippling the force on the schooner and rendering her less manageable after the collision, cannot be charged as a fault against the schooner, but is something for which the steamer, if in fault for the collision, is responsible. So, too, any injury sustained by the schooner, while the vessels were afoul, by the chafing of the two together, is injury for which the steamer is responsible.

It is evident that this collision was caused by the too great speed of the steamer in the fog. She was sailing at a rate of speed such that, because of the difficulty of seeing lights in the fog, she could not avoid this collision, although, at the moment when she saw the danger, she took all possible measures to avoid it. This was a fault, especially in a locality so frequented by vessels. The Pennsylvania, 19 Wall. [86 U. S.] 125.

There must be a decree for the libellant, with costs, with a reference to a commissioner to ascertain the damages sustained by the libellant.